## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN EICKHOFF AND<br>MICHELLE EICKHOFF,<br><br>           Plaintiffs,<br><br>v.<br><br>SCANNELL PROPERTIES #516, LLC,<br><br>           Defendant,<br><br>v.<br><br>H.B. CONSTRUCTION, et al.,<br><br>           Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION<br><br>    No. 24-2234-KHV |

## MEMORANDUM AND ORDER

On May 14, 2024, in the District Court of Wyandotte County, Kansas, plaintiffs John and Michelle Eickhoff filed suit against Scannell Properties #516, LLC, alleging public and private nuisance and negligence. On June 3, 2024, defendant removed the case to federal court. See Notice of Removal (Doc. #1). This matter is before the Court on Defendant Scannell Properties #516, LLC's Partial Motion For Summary Judgment (Doc. #186) filed August 25, 2025 and Plaintiffs John and Michelle Eickhoff's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment (Doc #211) filed September 15, 2025. For reasons stated below, the Court sustains defendant's motion for summary judgment on plaintiff's claims for $3,500,000.00 for "annoyance, discomfort, and inconvenience" in Counts I, II, III and IV (nuisance) and for "pain, suffering, anguish, annoyance, discomfort, and inconvenience" in Counts IV (negligence) and V,

except such damage claims related to Michelle Eickhoff's slip and fall.[1] See Pretrial Order (Doc. #181) filed August 22, 2025.[2]

## **Factual Background**

Scannell, through its agents, began construction on the Compass 70 Development Project in Spring of 2022 by clearing the 155-acre property. In summer of 2023, road construction for the Riverview Avenue Improvement Project began. From the beginning of each of these projects to present, Scannell allowed uncontrolled, effluent-filled stormwater discharges to exit its construction sites each time it rained. These effluent-filled stormwater discharges entered plaintiffs' property, carrying silt, sand and other debris. The discharges clogged the stream that ran through plaintiffs' property, and the stream no longer flows.

As a result, plaintiffs cannot use the stream for their own enjoyment, such as swimming and playing, or for its use, such as to water their cows. When silt, sand and debris exited Scannell's property, some of it would also settle in the roadway. In December of 2022, Michelle Eickhoff slipped and fell in the mud.

On the following dates, plaintiffs informed a Scannell employee of erosion control issues on their construction site: May 10, November 4, November 11, November 16, December 9, and December 19, 2022. In the two-year span leading to July 17, 2025, plaintiffs captured

---

[1]    Plaintiffs' claims in the complaint and amended complaint are misnumbered and plaintiffs' carry the misnumbering into the Pretrial Order (Doc. #181) filed August 22, 2025.

[2]    To expedite a ruling on this issue, because this case is set for trial on November 3, and mediation on September 24, 2025, the Court is communicating the reasons for its decision without attempting to draft a legal treatise or fully cite the relevant case law. The law in this area is clear and the Court has taken into account the authorities which are cited in the parties' briefs, along with other authorities. If necessary for future proceedings including any appeal, the Court may supplement this order with additional findings of fact or legal citations.

photographic evidence of nearly 40 instances where cloudy water left the construction site and reported it to members of local governments, the Kansas Department of Health and Environment or the Environmental Protection Agency.

Plaintiffs seek $3,500,000.00 for "annoyance, discomfort, and inconvenience" in Count I (private nuisance—lapse in 1st and 2nd temporary construction easements), Count II (private nuisance—exceeding scope of 2nd TCE), Count III (private nuisance—runoff) and Count IV (public nuisance). Plaintiffs also seek $3,500,000.00 for "pain, suffering, anguish, annoyance, discomfort, and inconvenience" for Count IV (negligence) and Count V (negligence per se).

## Analysis

Defendant seeks summary judgment on plaintiffs' claims seeking non-economic damages because plaintiffs did not allege physical injury in their tort claims for property damage. As a general rule, Kansas law prohibits recovery for emotional distress in tort actions, unless the emotional distress is accompanied by a physical injury. Anderson v. Scheffler, 242 Kan. 857, 752 P.2d 667 (1988); Hoard v. Shawnee Mission Medical Center, 233 Kan. 267, 662 P.2d 1214 (1983). The general rule precluding recovery for emotional distress in the absence of accompanying physical injuries is grounded on the need to prevent fraudulent or exaggerated claims. The Kansas Supreme Court gave this rational in Hoard, "The temporary emotion of fright, so far from serious that it does no physical harm, is so evanescent a thing, so easily counterfeited, and usually so trivial, that the courts have been quite unwilling to protect the plaintiff against mere negligence, where the elements of extreme outrage and moral blame which have had such weight in the case of the intentional tort are lacking." Id. Plaintiffs argue that their claims should be excluded from

the general rule because (1) defendants acted willfully, wantonly or intentionally and (2) defendant's actions naturally and inherently cause emotional distress.

## I.    Intentional Torts

Plaintiffs argue that the general rule excluding emotional distress damages without physical injury is not applicable to situations where the act is wanton or willful, or where the act is committed with intent to cause mental distress, citing Bowman v. Doherty, 235 Kan. 870, 876 (Kan. 1984).  Plaintiffs further cite Maddy v. Vulcan Materials Co., 737 F.Supp. 1528, 1536 (D. Kan. 1990), which found that "the moral blameworthiness associated with the defendant's conduct warrants the imposition of responsibility for emotional damages arising from the injury." Defendant argues that the holding in Maddy is that injury to property alone, even if committed willfully, will not itself permit recovery for emotional distress in the absence of physical injury.

The Kansas Supreme Court holding in Hopkins v. State, 237 Kan. 601, 702 P.2d 311 (1985), contradicts the view that plaintiffs may recover emotional damages without proof of accompanying physical damage, so long as they allege wanton conduct by defendant.  In Hopkins, plaintiffs sued several law enforcement officers and agencies after they apprehended an intruder in plaintiffs' mobile home. The officers had flushed out the intruder through their use of "numerous discharges of tear gas [and] a hail of bullets."  Hopkins, 237 Kan. at 603, 702 P.2d 311.  The district court found that defendants were immune from liability under the Kansas Tort Claims Act.

On appeal, the Kansas Supreme Court reversed in part and affirmed in part.  It reversed the trial court's award of summary judgment on the basis of governmental immunity, finding that plaintiffs had provided sufficient evidence of wanton conduct by defendants.  Because plaintiffs had provided proof of wanton conduct, the trial court's grant of summary judgment on the basis

of the Tort Claims Act was improper.  The Supreme Court remanded the case to permit plaintiffs to continue the action to recover for property damage to their home.  <u>Hopkins</u>, 237 Kan. at 612, 702 P.2d 311.

However, the Kansas Supreme Court also affirmed the trial court's award of summary judgment to defendants on plaintiffs' claims of mental distress.  Plaintiffs had experienced no physical injuries but sought recovery for mental distress and "physical distress in the form of insomnia, headaches, weight gain and general physical upset."  <u>Id.</u>  The Kansas Supreme Court held that the general rule stated in <u>Hoard</u> is controlling: "there can be no recovery for emotional distress suffered by a plaintiff unless it is accompanied by or results from physical injury to the plaintiff."  <u>Id.</u> at 612–613.  The Kansas Supreme Court thus applied the general rule requiring physical injury, even though it had previously found that plaintiffs had provided sufficient proof of wanton conduct to avoid a motion for summary judgment as to liability.

In <u>Maddy v. Vulcan Materials Co.</u>, 737 F. Supp. 1528, 1535–36 (D. Kan. 1990), by narrowly construing Bowman, this Court addressed the apparent conflict between the Kansas Supreme Court's holdings in <u>Bowman</u> and <u>Hopkins</u> concerning whether intentional or wanton behavior supports emotional damages.  Central to the Kansas Supreme Court's conclusion in <u>Bowman</u> was its finding that "being negligently deprived of . . . freedom suffers an injury which could cause mental distress."  <u>Bowman</u> 235 Kan. at 877.  The deprivation of freedom is sufficiently grievous to permit the recovery of damages for mental distress, since the deprivation provides a direct and logical source of distress.  Further, like an accompanying physical injury, its existence provides a concrete and provable event, a touchstone which serves to minimize the possibility that the claimed distress is fraudulent, feigned or exaggerated.

The intentional torts that Kansas courts have allowed to recover emotional damages without accompanying injuries follow the same logic: false imprisonment (Bowman v. Doherty, 235 Kan. 870, 686 P.2d 112 (1984)); invasion of privacy (Monroe v. Darr, 221 Kan. 281, 559 P.2d 322 (1977)); tort of outrage (Dawson v. Associate Financial Services, 215 Kan. 814, 529 P.2d 104 (1974)); assault of an aggravated character (William Small & Co. v. Lonergan, 81 Kan. 48, 54, 105 P. 27 (1909)); and assault, illegal arrest, malicious prosecution, false imprisonment, seduction and slander (see Bowman v. Doherty, 235 Kan. 870, 876, 686 P.2d 112 (1984)).  These torts share the characteristic that defendants acted to intentionally inflict injury on plaintiff, thus the moral blameworthiness associated with defendant's conduct warrants the imposition of responsibility for emotional damages arising from said injury.  Maddy, 737 F. Supp. at 1536.

Here, plaintiffs have presented evidence of defendant's continued failure to implement proper erosion controls over a span of multiple years and a rational jury could find their behavior willful or wanton.  However, plaintiffs present no evidence that defendant intentionally acted to injure them, or that defendant purposefully failed to implement controls to harm plaintiffs out of malice.  Defendant's conduct, even viewed in the light most favorable to plaintiffs, does not have the moral blameworthiness that warrants departing from the typical rule to allow emotional damages.

## II.    Harm Inherently Causes Emotional Distress

Plaintiffs argue that their emotional damages (annoyance, discomfort and inconvenience) directly and naturally arise from the misuse of defendant's property and thus they are able to seek non-economic damages under Maddy and Bolin. Plaintiffs' Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment (Doc. #211) at 21.

Kansas courts have historically allowed emotional damages in certain circumstances beyond

just intentional torts and without accompanying physical injury. These include recovery for emotional harm due to the negligent mishandling of a corpse of a close relative (<u>Hamilton v. Individual Mausoleum Co.</u>, 149 Kan. 216, 86 P.2d 501 (1939)), and accidental ingestion of repellant or nauseating substances (<u>Connell v. Norton Coca–Cola Bottling Co.</u>, 187 Kan. 393, 357 P.2d 804 (1960) (decomposed centipede in bottle of Coca Cola)); (<u>Cernes v. Pittsburg Coca Cola Bottling</u>, 183 Kan. 758, 332 P.2d 258 (1958) (slimy substance in bottle of Coca Cola)).

In <u>Maddy</u>, this Court found that these incidents share the characteristic that plaintiffs' experiences were of such a nature as to "naturally and inherently cause emotional distress." <u>Maddy</u>, 737 F. Supp. 1528, 1536. Thus, Kansas courts determined that in these cases, the probability of emotional distress due to the special type of injury suffered by plaintiff minimizes the chance that the claim of emotional distress is asserted fraudulently. These cases are unlike traditional tort cases, in which emotional distress is "so easily counterfeited, and usually so trivial." <u>Hoard</u>, 233 Kan. at 274, 662 P.2d at 1214.

Plaintiffs argue that their annoyances, discomforts and inconveniences directly and naturally arise from defendant's actions, as they testified to the misery they have endured with the mud and silt on their land and the constant worry of what will happen next. This Court must determine as a matter of law whether defendant's conduct is of such a nature as to naturally and inherently cause emotional distress.

In addition to the examples above (mishandling a corpse and ingesting nauseating substances), Kansas courts have found that dumps built next to plaintiffs' homes, which created a foul stench that permeated and surrounded their homes, and led to plagues of vermin or fires met the burden for recovering emotional damages without proof of physical injury. <u>Steifer v. City of Kansas</u>

City, 175 Kan. 794, 798, 267 P.2d 474 (1954); Davis v. City of Kansas City, 204 Kan. 524, 530, 464 P.2d 154 (1970).

Conversely, in Maddy, the court found that defendant's alleged chemical leak into the groundwater, where plaintiffs could not show actual exposure to unsafe levels of the chemical and only testified to their fear of the possible exposure, lacked a reasonable and natural connection to plaintiffs' emotional distress. 737 F. Supp. at 1538. In Maxedon v. Texaco Producing Inc., 710 F. Supp. 1306, 1311 (D. Kan. 1989), this Court found that defendant's pollution of salt water, oil and refuse on plaintiff's land did not allow for emotional distress damages without physical injury.

Here, plaintiffs' experience is more akin to Maddy and Maxedon than Steifer and Davis. Silt running into the creek and having mud when it rains is not inherently distressing like a "plague of vermin" or a constant foul stench. See Davis, 204 Kan. 524, 530. Though plaintiffs testified that the mud caused their distress, they have not shown that defendant's conduct was inherently and naturally likely to cause emotional distress for which Kansas would grant a right to recover.

**III.    Nuisance Claim**

Plaintiffs argue that on a nuisance claim, Kansas law does not require physical injury for damages for impairment of the "loss of use and enjoyment," citing Bolin v. Cessna Aircraft Co., 759 F.Supp. 692, 720 (D. Kan. 1991).

Nuisance is an annoyance that obstructs the reasonable and comfortable use and enjoyment of the property. Id.; see Culwell v. Abbott Constr. Co., 211 Kan. 359, 506 P.2d 1191, syl. 1 (1973). Though Bolin held that to recover emotional distress, nuisance claims do not necessarily require personal injury. It did so by separating psychic "emotional distress" injuries, which are an injury to the person, from injuries to the property interest in comfortable use and enjoyment of land. Id.

The Court concluded that plaintiffs could recover for "annoyance, discomfort, inconvenience and peace of mind (emotional distress)" as part of a claim for impaired "use and enjoyment" of their property, but not as a free-standing claim for "emotional distress." Bolin, 759 F.Supp. 692 at 720.

Here, plaintiffs have an independent claim for "loss of use" of their property, which they treat separately from "annoyance, discomfort, and inconvenience." Pretrial Order (Doc. #181). Plaintiffs cannot argue that their emotional distress claim is really one for the loss of use and enjoyment of their property interest.[3] Furthermore, plaintiffs' negligence claims clearly treat damages for annoyance, discomfort and inconvenience as emotional distress damages: their negligence damages are for "pain, suffering, anguish, annoyance, discomfort, and inconvenience" and are calculated for the exact same amount ($3,500,000) as the nuisance claims. Pretrial Order (Doc. #181).

Finally, Maddy applies to nuisance claims, as the very claim in Maddy was a nuisance claim. 737 F. Supp. 1528. Though Bolin does not directly state that the nuisance in that case naturally and inherently caused emotional distress so as to allow damages without physical injury as required by Maddy, the circumstances there would likely meet this threshold, as plaintiffs proved that defendants contaminated the groundwater in their well with carcinogenic trichloroethylene. Bolin, 759 F.Supp. 692. Furthermore, Bolin relied on Davis v. City of Kansas City, 204 Kan. 524, 530, 464 P.2d 154 (1970) (dump leading to plague of vermin, discussed in previous section) and Klassen v. Central Kansas Co-op. Creamery Ass'n, 160 Kan. 697, 165 P.2d 601 (1946) (stream

---

[3]    At the hearing on September 23, 2025, plaintiffs clarified their intention to treat their nuisance claims for "annoyance, discomfort, and inconvenience" ($3,500,000) as nuisance claims for "loss of use" ($250,000) and asked for leave to amend the Pretrial Order to bundle them together into a unified claim for $3,750,000. For the reasons stated on the record in that hearing, the Court denied leave to amend.

polluted with obnoxious odor) which both fit the standard of <u>Maddy</u> as inherently distressing. Therefore, this Court analyzes plaintiffs' claims under the test given in <u>Maddy</u>, which plaintiffs fail for reasons previously discussed.

**IT IS THERFORE ORDERED THAT** <u>Defendant Scannell Properties #516, LLC's Partial Motion For Summary Judgment</u> (Doc. #186) filed August 25, 2025, is **SUSTAINED IN PART.**  Except as to non-economic damages related to Michelle Eickhoff's personal injury**,** defendant is entitled to summary judgment on plaintiffs' claims for non-economic damages on all counts.

Dated this 23rd day of September, 2025 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge